# IN UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| LINDA HADEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:08-CV-384-WKW |
| EMERALD COAST RV CENTER, LLC, | ) | |
| FREEDOMROADS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS' UNOPPOSED MOTION
TO STAY THE PROCEEDINGS AND COMPEL ARBITRATION**

**I.     INTRODUCTION**

Each of Linda Haden's claims against Emerald Coast RV Center, LLC and FreedomRoads, LLC (collectively "Emerald Coast") must be arbitrated pursuant to and in accordance with an Arbitration Agreement ("the Agreement") entered into between Emerald Coast and Haden. The Agreement is enforceable under the Federal Arbitration Act ("FAA") and Alabama law. Pursuant to the FAA and the Agreement signed by the parties, this civil action must be stayed pending arbitration and arbitration must be compelled.

## II. STATEMENT OF FACTS

### A. Haden's Claims

Linda Haden (Haden) was employed as a Sales Associate at Emerald Coast's Dothan, Alabama RV dealership. (Complaint ¶ 8; McPherson Decl. ¶ 7). Haden alleges that she was sexually harassed and that her employment was terminated in retaliation for purported complaints of alleged harassment. (Complaint Counts I and I). She states claims for harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended. (Complaint ¶ 1, Counts I and II). Haden also asserts state law tort claims for intentional infliction of emotional distress and negligent training and supervision. (Complaint, Counts III, IV and V).

### B. The Arbitration Agreement

On or about March 10, 2005, Haden signed an Arbitration Agreement requiring her to submit any dispute, claim, or controversy arising from her employment with Emerald Coast to arbitration. (McPherson Decl. ¶ 5, Ex. 1). A representative of Emerald Coast also signed the Arbitration Agreement. (McPherson Decl. ¶ 5, Ex. 1). The Agreement is applicable to claims "with or against Emerald Coast RV Center, LLC, any parent or subsidiary of, or any Company affiliated with Emerald Coast RV Center, LLC." (McPherson Decl. Ex. 1, ¶ 1). Emerald Coast RV Center, LLC is a wholly owned subsidiary of

FreedomRoads Operations Company, LLC, which in turn is a wholly owned subsidiary of FreedomRoads, LLC. (Mondo Decl. ¶ 2).

The Arbitration Agreement contains a procedure for the resolution of disputes out of court, requiring binding arbitration. (McPherson Decl. Ex. 1, ¶ 1). The Agreement is in writing, and clearly states that providing an application for or an offer of employment, as well as mutual promises made by the parties, constitutes sufficient consideration. (McPherson Decl. Ex. 1, Introductory Paragraph).

### C. The Broad Scope of the Arbitration Agreement

The Arbitration Agreement requires arbitration of most claims that could arise between Emerald Coast and its employees, encompassing a broad range of federal and state statutory and common law claims. With limited exceptions not applicable here, the Arbitration Agreement covers "all claims or controversies, whether or not arising out of employment or termination of employment, that would constitute a cause of action in a court . . . ." (McPherson Decl. Ex. 1, ¶ 2). It specifically states that Emerald Coast and its employees "acknowledge that arbitration is a substitute for traditional litigation and hereby waive their respective rights to file a private lawsuit and have that suit heard in court by a judge or a jury." (McPherson Decl. Ex. 1, ¶ 3). Further, the Agreement expressly covers claims brought pursuant to Title VII and "any other federal, state or local statute,

regulation, ordinance or common law, including without limitation any law related to discrimination, terms and conditions of employment or termination of employment …." (McPherson Decl. Ex. 1, ¶ 2).

### D. Emerald Coast's Operations Involve Interstate Commerce

Emerald Coast's operations have a substantial impact on interstate commerce. Haden was employed at the Emerald Coast dealership located at 2961 Ross Clark Circle, Dothan, Alabama 36303. (McPherson Decl. ¶ 6). Ross Clark Circle is also known as United States Highway 231, which extends beyond Alabama into Florida, where it leads to Interstate Highway 10 about 33 miles away. (McPherson Decl. ¶ 6). Interstate Highway 10 extends beyond Florida into Alabama, Mississippi and Louisiana. (McPherson Decl. ¶ 6). Emerald Coast's Dothan location is approximately 15 miles north of the Florida border and approximately 15 miles west of the Georgia border. (McPherson Decl. ¶ 6).

Emerald Coast sells recreational vehicles, including travel trailers, 5th wheels and motor homes, to out-of-state purchasers from across the United States, including but not limited to sales made to purchasers in Florida and Georgia. (McPherson Decl. ¶ 7). Many Emerald Coast sales associates work and make sales at RV shows in other states, including Florida. (McPherson Decl. ¶ 7). Additionally, the vehicles sold by Emerald Coast are manufactured across the United States, from Oregon to Indiana. (McPherson Decl. ¶ 7). Inventory,

4

including travel trailers, 5th wheels and motor homes, is frequently transferred between FreedomRoads dealerships, and the Dothan dealership has received inventory from dealerships in New York, Tennessee, Illinois, Florida, Georgia and Indiana. (McPherson Decl. ¶ 7). The out-of-state purchasers, manufacturers and sharing of inventory are integral parts of the business operations of Emerald Coast's Dothan, Alabama dealership. (McPherson Decl. ¶ 7).

Furthermore, Haden has expressly "acknowledge[d] and agree[d] that Emerald Coast RV Center, LLC engages in transactions involving interstate commerce and that [her] employment involve[d] such commerce." (McPherson Decl. Ex. 1, ¶ 5). The parties further agreed "that the Federal Arbitration Act shall govern this Agreement." *Id.*

## III. ARGUMENT

### A. The Federal Arbitration Act is Applicable

The FAA provides for the enforcement of written agreements to arbitrate such as the one signed by the parties here. 9 U.S.C. § 2 (1947). Section 2 of the FAA provides that "a written provision in any … contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The United States Supreme Court has declared that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 24 (1983). The policy favoring arbitration is so strong that "a motion to compel arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (internal quotations omitted). The FAA's power preempts contrary state law and governs all written arbitration provisions appearing in contracts that involve or affect interstate commerce. *See Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 272, 277, 281 (1995); *Ex parte Messer*, 797 So.2d 1079, 1082-83 (Ala. 2001).

The enforcement of arbitration agreements in the employment context is not unusual in federal and state courts. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (stating that "[t]he Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of Congressional enactments giving employees specific protection against discrimination prohibited by federal law"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir. 2000); *Ryan's Family Steak Houses, Inc. v. Regelin*, 735 So.2d

454 (Ala. 1999); *Ex parte McNaughton*, 728 So.2d 592 (Ala. 1998), *cert. denied*, 528 U.S. 818 (1999).

Furthermore, the United States Supreme Court has held that arbitration can be particularly beneficial in employment disputes such as those at issue here because "arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation . . . ." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). In *Circuit City*, the Court reiterated that an employee should not be expected to abandon substantive rights when arbitrating his claims. Rather, by agreeing to arbitrate, an employee simply agrees to have his claims "resol[ved] in an arbitral, rather than a judicial forum." *Id.* The Court also noted, "arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protections against discrimination prohibited by federal law." *Id.* Under the FAA and the Supreme Court's decision in *Circuit City*, therefore, Haden's claims are subject to the mandatory arbitration provisions of the Agreement, and Emerald Coast's motion to stay and compel arbitration should be granted.

**B.    The Arbitration Agreement is Valid**

Emerald Coast's Arbitration Agreement meets the requirements set forth under the FAA for valid arbitration agreements. *See Allied-Bruce Terminex Co. v.*

*Dobson*, 513 U.S. 265, 273-74 (1995) (noting that the FAA governs all written arbitration provisions appearing in contracts that involve or affect interstate commerce). Furthermore, the contract is valid under basic state law contract principles of offer, acceptance, and consideration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (holding that the question of whether a valid agreement to arbitrate exists is determined by state contract law); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005), *cert. denied*, 547 U.S. 1128 (2006). Under Alabama law, "the requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Baptist Health System, Inc. v. Mack*, 860 So.2d 1265, 1273 (Ala. 2003) (quoting *Ex parte Grant*, 711 So.2d 464, 465 (Ala. 1997) (citations omitted)).

Emerald Coast provided the written Arbitration Agreement to Haden in March of 2005. Haden signed the Agreement, acknowledging that she had read and understood the terms contained therein. Under Alabama law, Haden's signature alone is sufficient to place her on notice of the Agreement's provisions. *See Green Tree Agency v. White*, 719 So.2d 1179, 1180 (Ala. 1998) ("[W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all provisions contained in that contract

and will be bound thereby" (quoting *Power Equip. Co. v. First Alabama Bank*, 585 So.2d 1291, 1296 (Ala. 1991)).

Haden accepted the offer and supplied the necessary consideration by making a mutual promise with Emerald Coast to submit all employment disputes to arbitration. Further, Emerald Coast's arbitration document plainly states that Haden agreed to arbitrate claims

> [i]n consideration of Emerald Coast RV Center, LLC providing prospective Associates with an application for employment, or an offer of employment or continued employment by Emerald Coast RV Center, LLC, and the compensation and job benefits that Associate has and/or will receive from Emerald Coast RV Center, LLC, the benefits of the speedy, impartial and cost-effective dispute resolution procedure described [in the Agreement], and the mutual promises made by Associate and Emerald Coast RV Center, LLC herein . . . .

(McPherson Decl. Ex. 1, Introductory Paragraph). The Agreement, therefore, was signed by Haden and is supported by sufficient consideration, making it enforceable under Alabama law. A valid contract having been formed, both Emerald Coast and Haden are bound by its terms. *See Mitsubishi Motors v. Soler Chrysler-Plymouth*, 472 U.S. 614, 626 (1985) (holding that the determination of whether an issue is arbitrable depends upon whether the parties agreed to arbitrate the dispute).

### C. Haden's Claims Are Arbitrable

Haden's claims are within the scope of the Arbitration Agreement. The Agreement expressly states that "all claims or controversies, whether or not arising

9

out of employment or termination of employment, that would constitute a cause of action in a court" are subject to the Agreement's alternative dispute resolution procedures. (McPherson Decl. Ex. 1, ¶ 2). Thus, the broad language of the Arbitration Agreement encompasses all of Haden's claims. Moreover, the Agreement specifically contemplates its application to tort and Title VII claims:

> [t]he disputes and claims covered by this Agreement . . . includ[e] but [are] not limited to . . . tort claims; [a]nd claims for violation of any federal, state, local, or other governmental law, statute, regulation or ordinance including but not limited to claims, if any, based on . . . the Civil Rights Act of 1991; Title VII of the Civil Rights Act of 1964; . . . .

(McPherson Decl. Ex. 1, ¶ 2). Because Haden's claims fall within the scope of the Emerald Coast Arbitration Agreement, they must be arbitrated.

Haden's claims against FreedomRoads are also covered by the Agreement. The Agreement is applicable to claims "with or against Emerald Coast RV Center, LLC, any parent or subsidiary of, or any Company affiliated with Emerald Coast RV Center, LLC." (McPherson Decl. Ex. 1, ¶ 1). Emerald Coast is a wholly owned subsidiary of FreedomRoads Operations Company, LLC, which in turn is a wholly owned subsidiary of FreedomRoads, LLC. (Mondo Decl. ¶ 2). Thus, Haden's claims against FreedomRoads must also be arbitrated.

### D. The Arbitration Agreement Involves Interstate Commerce

The FAA mandates that Haden's claims be arbitrated because the Agreement between the parties involves interstate commerce. The FAA applies to

the written provision of a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. This language extends the reach of the FAA to the limits of Congress's power to regulate under the Commerce Clause of the United States Constitution. *See Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 277 (1995). According to the Supreme Court, "involving" should be read as the equivalent of "affecting," covering not only activities "in the flow" of interstate commerce, but also activities that "affect" interstate commerce. *Id.* at 273-74; *see also Fidelity Nat. Title Ins. Co. v. Jericho Mgmt. Inc.*, 722 So.2d 740, 744 (Ala. 1998) (Under the FAA, a transaction "involves" interstate commerce if it has virtually any tangible effect on the generation of goods or services for interstate markets and their distribution to the consumer).

Because the FAA reaches the limits of Congressional power to regulate under the Commerce Clause, and because "involving" is the substantial equivalent of "affecting," Emerald Coast cannot be engaged in an industry affecting interstate commerce under Title VII without Haden's employment at Emerald Coast also constituting a "transaction involving interstate commerce" for purposes of the FAA. Moreover, the Agreement "involves" interstate commerce within the meaning of the FAA because Haden expressly "acknowledge[d] and agree[d] that Emerald Coast RV Centers, LLC engages in transactions involving interstate commerce and that his/her employment involve[d] such commerce." (McPherson

Decl. Ex. 1, ¶ 5). The Agreement's explicit acknowledgment that it affects interstate commerce amounts to a stipulation that the FAA is applicable.

Even without the stipulation, the Agreement clearly affects interstate commerce. As discussed above, Haden was employed at the Emerald Coast dealership located at 2961 Ross Clark Circle, Dothan, Alabama 36303. (McPherson Decl. ¶ 6). Ross Clark Circle is also known as United States Highway 231, which extends beyond Alabama into Florida, where it leads to Interstate Highway 10 about 33 miles away. (McPherson Decl. ¶ 6). Interstate Highway 10 extends beyond Florida into Alabama, Mississippi and Louisiana. (McPherson Decl. ¶ 6). Emerald Coast's Dothan location is approximately 15 miles north of the Florida border and approximately 15 miles west of the Georgia border. (McPherson Decl. ¶ 6).

Emerald Coast sells recreational vehicles, including travel trailers, 5th wheels and motor homes, to out-of-state purchasers from across the United States, including but not limited to sales made to purchasers in Florida and Georgia. (McPherson Decl. ¶ 7). Many Emerald Coast sales associates work and make sales at RV shows in other states, including Florida. (McPherson Decl. ¶ 7). Additionally, the vehicles sold by Emerald Coast are manufactured across the United States, from Oregon to Indiana. (McPherson Decl. ¶ 7). Inventory, including travel trailers, 5th wheels and motor homes, is frequently transferred

between FreedomRoads dealerships, and the Dothan dealership has received inventory from dealerships in New York, Tennessee, Illinois, Florida, Georgia and Indiana. (McPherson Decl. ¶ 7). The out-of-state purchasers, manufacturers and sharing of inventory are integral parts of the business operations of Emerald Coast's Dothan, Alabama dealership. (McPherson Decl. ¶ 7).

In 1964, the United States Supreme Court found that Ollie's Barbecue, a local, non-franchised restaurant in Birmingham, Alabama, affected interstate commerce because of the food it received from out-of-state vendors. *See Katzenbach v. McClung*, 379 U.S. 294 (1964). In *Katzenbach*, the Court stated that even though an employer's participation in interstate commerce may be small, a "'contribution [to interstate commerce], taken together with that of many others similarly situated, is far from trivial.'" *Id.* at 301 (*quoting Wickard v. Filburn*, 317 U.S. 111, 127-28 (1942)). The Court also noted in *Kirschbaum Co.* v. *Walling*, 316 U.S. 517 (1947), that "Congress has explicitly regulated not merely transactions or goods in interstate commerce but activities which in isolation might be deemed to be merely local but in the interlacings of business across state lines . . . affect such commerce." *See also Polish Nat'l Alliance v. NLRB*, 322 U.S. 643 (1944). Emerald Coast's sales of vehicles manufactured by out-of-state vendors and distribution to consumers who live across state lines noticeably affect interstate commerce, rendering the application of the FAA appropriate in this case.

Accordingly, Emerald Coast's business and Haden's employment affect commerce for purposes of the FAA. Haden's claims should be referred to arbitration pursuant to the valid agreement she signed with Emerald Coast.

### E. The Court Should Stay the Proceedings and Compel Arbitration

When, as here, the parties have entered an enforceable agreement to arbitrate, the FAA requires a stay of any court proceedings pending arbitration. Section 3 of the FAA provides:

> [i]f any suit or proceeding be brought in any courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (1947).

Moreover, Section 4 of the FAA provides for an order compelling arbitration pursuant to a valid written arbitration agreement such as the one signed by the parties here. In accordance with the FAA, Emerald Coast's motion to stay the proceedings and compel Haden to arbitrate her claims is due to be granted.

## IV. CONCLUSION

For the foregoing reasons, Emerald Coast RV Center, LLC and FreedomRoads, LLC respectfully request that their Motion to Stay the Proceedings

and Compel Arbitration be granted. All issues in this matter are referable to arbitration.

                Respectfully submitted,

                s/ Jennifer F. Swain
                Jennifer F. Swain
                Hans P. Schmidt
                Attorneys for Defendants
                Emerald Coast RV Center, LLC and
                FreedomRoads, LLC

**OF COUNSEL:**
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**
420 20th Street North, Suite 1600
Birmingham, Alabama 35203
(205) 250-8370 (telephone)
(205) 322-8007 (facsimile)

## CERTIFICATE OF SERVICE

     I hereby certify that this pleading has been filed electronically on June 16, 2008, with copies served thereby on the following:

Elizabeth B. Glasgow, Esq.
Joel Weatherford, Esq.
Farmer, Price, Hornsby & Weatherford, L.L.P.
100 Adris Place (36303)
Post Office Drawer 2228
Dothan, Alabama 36302

                s/ Jennifer F. Swain
                Of Counsel